UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

JUDGE PETER J. WALSH

824 MARKET STREET
WILMINGTON, DE 19801
(302) 252-2925

July 18, 2006

Amy J. Greer
Senior Trial Counsel
Securities and Exchange Commission
Mellon Independence Center
701 Market Street
Suite 2000
Philadelphia, PA 19106

Counsel to the Securities and
Exchange Commission

Mr. Charles Zandford
420 Union Street
Milton, DE 19968

Pro Se Debtor

**Re:  In re Charles Zandford
      Case No. 05-13305**

Dear Counsel and Mr. Zandford:

  This is with respect to the Debtor's petition (Doc. # 31 and supplements thereto) to disallow the SEC's proof of claim. The proof of claim is based on a civil judgment (requiring disgorgement) following a criminal conviction of the Debtor for securities law violations.

  Based on the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 et. seq.), the Debtor's position is that the SEC has

no standing to assert this claim: According to the Debtor, "[b]y law, the debt in this matter belongs to FMS [the Financial Management Service of the Treasury Department] for collection on SEC's behalf, and as such SEC has no standing in this matter, and must refer the debt to FMS upon disposition of this bankruptcy." (Doc. # 82, pp. 8-9). This position is premised on the requirement of 31 U.S.C. § 3711 that an agency such as the SEC must refer collection of a debt to the Treasury Department when the debt is delinquent for 180 days. Since no such transfer was made by the SEC to the Treasury Department, the Debtor believes that the SEC cannot assert its claim in this bankruptcy case. The SEC argues that, inter alia, any transfer deficiency cannot be used by the Debtor to avoid collection.

I find the SEC to be correct as to the application here of the Debt Collection Improvement Act of 1996. Pursuant to 31 U.S.C. § 3711(d)(2), the Secretary of the Treasury (the "Secretary") and the Attorney General of the United States are authorized to prescribe standards for Federal agency use in the administrative collection, offset, compromise, and the suspension or termination of collection activity for civil claims. The Attorney General and the Secretary have exercised this authority by issuing the regulations contained in parts 900-904 of chapter IX of Title 31 of the Code of Federal Regulations. 31 CFR 900.1(a). Part 901 makes clear that, with certain exceptions, "[a]gencies

shall transfer to the Secretary any debt that has been delinquent for a period of 180 days or more so that the Secretary may take appropriate action to collect the debtor or termination collection action." 31 CFR 901.1(e)(citing 31 CFR 285.12). However, part 900 makes equally clear that the "standards in this chapter do not create any right or benefit, substantive or procedural, enforceable at law or in equity by a party against the United States, its agencies, its officers, or any other person, nor shall the failure of an agency to comply with any of the provisions of parts 900-904 of this chapter be available to any debtor as a defense." 31 CFR 900.8. Thus, the regulations prohibit the Debtor from using these agency operating procedures as either a sword or a shield.

I am, therefore, denying the Debtor's petition to disallow the SEC's claim.

Even if I were to grant the Debtor's petition to disallow the claim, this would have no practical significance. The SEC timely filed its proof of claim and it could at this time simply transfer the claim to the Treasury Department under Bankruptcy Rule 3001(e)(2), or alternatively, the proof of claim could be amended to substitute the Treasury Department for the SEC.

Moreover, it is important to recognize that the Debtor's petition seeks only to disallow the claim. Disallowance and dischargeability are different issues. Thus, the claim is

4

nondischargeable regardless of whether it is disallowed. 11 U.S.C. § 523(a)(19).

True, if the claim were disallowed, the SEC could not recover against the <u>bankruptcy estate</u>. Nonetheless, the SEC could still recover against the <u>Debtor</u>. Indeed, "[n]either the bankruptcy rules nor the proof of claim bar date prevents a creditor holding a nondischargeable debt who has not filed a proof of claim from collecting outside of bankruptcy." <u>Educ. Credit Mgmt. Corp. v. Loving (In re Loving)</u>, 269 B.R. 655, 662 (Bankr. D. Ind. 2001).

Put differently, disallowing this claim does not make it disappear—it is still nondischargeable and will survive the Debtor's bankruptcy. <u>Grynberg v. United States (In re Grynberg)</u>, 986 F.2d 367, 371 n.7 (10th Cir. 1993)("[T]he fact that a governmental unit is subject to bankruptcy court jurisdiction on the question of dischargeability even if it never filed a proof of claim does not mean that a governmental unit's failure to file a proof of claim on a nondischargeable debt necessarily results in discharge."); <u>see</u> <u>also</u> 4 COLLIER ON BANKRUPTCY P 501.01[3][d] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2005)("Although failure to file a proof of claim may preclude a creditor from receiving distributions from the estate, a claim for a nondischargeable debt survives the bankruptcy discharge.").

In many (if not most) circumstances, it is in a debtor's interest to include nondischargeable claims within the bankruptcy proceedings. Section 501(c) of the Bankruptcy Code recognizes this reality and specifically provides that "[i]f a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim." 11 U.S.C. § 501(c). The leading treatise on bankruptcy law explains:

> The primary purpose of permitting the debtor or the trustee to file [a proof of claim] is to protect the debtor in those situations in which the creditor's claim is nondischargeable. An individual debtor, after receiving a discharge, still remains liable for those debts which are nondischargeable pursuant to section 523(a) or, in chapter 13 cases, pursuant to section 1328(a). Because there would be no distribution on a nondischargeable claim of a creditor who did not file a proof of claim, the debtor would have a greater debt to repay after the closing of the case than if a proof had been filed for the nondischargeable claim and the claim was paid in part or in full in the case or under the plan.

4 COLLIER ON BANKRUPTCY P 501.04 (footnotes omitted).

This case illustrates the point. I believe that the only asset being administered by the chapter 7 trustee is the $75,000 distribution received from the Debtor's wife's estate. An April 17, 2006 order allowed the trustee to turnover to the Debtor $18,784 of exempt property from that asset. Thus, the balance in the estate is $56,216 (not accounting for administrative expenses). According to the amended schedules, the total claims amount to

$376,195.  Of this total, $349,204 is attributable to the SEC claim.  As such, the total of all other claims is $26,991.

Applying these numbers, it becomes clear that the Debtor is benefitted by allowing the claim.  If allowed, the estate's assets ($56,216) would be used to pay the total claims ($376,195).  Roughly speaking, this would provide for a distribution of 14.94 cents on the dollar for creditors.  At the end of the bankruptcy, the Debtor would be relieved from liability on all dischargeable debts (the $26,991).  But the Debtor would still have to satisfy the SEC's claim, less the 14.94% distribution to the SEC.  In other words, after the bankruptcy, the Debtor would owe the SEC $297,032.92 (or 85.06% of $349,204).

On the other hand, if the SEC's claim were disallowed, then the rest of the creditors would realize a 100% distribution (plus interest), because the estate's assets ($56,216) would more than satisfy the outstanding non-SEC debt ($26,991).  Then, pursuant to 11 U.S.C. § 726(a)(6), the Debtor would be entitled to the remaining assets in the estate, which would approximately be $29,225 ($56,216 less $26,991).  However, this distribution to the Debtor would likely only be a temporary victory, because the Debtor would remain fully liable on his debt to the SEC.  Further, the SEC would presumably seek to attach the remaining assets (the $29,225) held by the chapter 7 trustee that would otherwise be returned to the Debtor.  In other words, after the bankruptcy, the Debtor would

owe the SEC $349,204. But the SEC would likely attach and collect the $29,225, thereby reducing its claim to $319,979.

In the end, the difference between allowing the claim and disallowing the claim is as follows. If allowed, the Debtor would owe the SEC roughly $297,032.92. If the claim were disallowed, and the SEC recovered the remaining assets from the estate by attachment, then the Debtor would owe the SEC roughly $319,979. In both cases, the nondischargeable liabilities would be extinguished.

(Note that the above calculations do not take into account administrative expenses or possible interest on claims.)

Thus, disallowance of the SEC claim actually is detrimental to the Debtor. Disallowing the claim would not cause it to disappear; rather, it would simply result in the Debtor being required to satisfy his obligation to the SEC entirely out of his post-bankruptcy funds.

Very truly yours,

Peter J. Walsh

PJW:ipm
cc: Jeffrey S. Cianciulli, Esquire